

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF:KRA  *271 Cadman Plaza East*
F. #2023R00775  *Brooklyn, New York 11201*

December 21, 2023

By E-mail and ECF

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Justin Poon
                Criminal Docket No. 23-533 (BMC)

Dear Judge Scanlon:

      The government respectfully submits this letter in support of its application for a permanent order of detention for defendant Justin Poon (the "defendant" or "Poon"). The defendant has engaged in prolific misconduct relating to the production, collection, and distribution of child pornography, and sextortion targeting dozens of victims, including minors. The defendant's conduct reflects an utter disregard for the considerable trauma inflicted on his victims and their families. Similarly, given the defendant's significant criminal exposure—including a 25-year combined mandatory minimum for sexual exploitation of a child and committing the instant offense while registered as a sex offender—and the overwhelming weight of the evidence against him, the defendant is very much incentivized to flee. For these reasons, the government seeks detention.

I.    Background

    A.    Offense Conduct and Background

      The defendant is charged with extremely serious misconduct: sexually exploiting at least two minor girls for the purpose of creating child pornography. The defendant targeted each of his then-16-year-old victims and solicited their production of materials for both his sexual gratification and financial gain. The defendant even maintained a sexual relationship with one of his victims for two years when she was still a minor, arranging illicit encounters and traveling across state lines to have sex with her.

This misconduct did not happen in a vacuum. It was part and parcel of the defendant's prolific sextortion scheme, which our initial analysis suggests targeted at least four dozen victims—including minors, other young females, and males. The defendant threatened to expose his victims' sexually explicit material (or possession thereof) to their friends and family if they did not comply with his demands. Review of Cash App returns, for accounts registered in the defendant's name, make his intent clear: "Or i post your nudes," "Or I post your head vid," "Send this or I post what I have," and far too many others.

Nor did the defendant's misconduct happen on a clean slate. In 2019, the defendant, then 20, had sex with a 15-year-old girl, which led to a state sex offense conviction, a sentence of probation, and his registration as a sex offender. As will be explained in further detail below, the defendant has utterly failed to comply with the conditions of his probation, and his misconduct is ongoing, with one of the charged victims receiving a message we currently believe to have come from the defendant just last week.

Based on his misconduct, on December 20, 2023, a grand jury returned an indictment charging the defendant with (1) two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a); (2) one count of transmission of threats with intent to extort, in violation of 18 U.S.C. § 875(d); and (3) one count of commission of a qualifying sex offense as a registered sex offender, in violation of 18 U.S.C. § 2260A.

The defendant faces significant criminal exposure. The defendant faces a mandatory 15-year sentence for sexual exploitation of a child under § 2251(e)[1] and a mandatory consecutive 10-year sentence under § 2260A for having committed that offense while registered as a sex offender. The evidence against the defendant is also overwhelming, and includes a substantial number of message threads, images and videos, metadata, and other records linking him directly to the alleged misconduct.

II.     Legal Standard

   A.     The Bail Reform Act

Under the Bail Reform Act, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See 18 U.S.C. § 3142(f); see also United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See 18 U.S.C. § 3142(f); see also United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

---

[1] This does not account for any heightened penalty based on his prior sex offense.

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant.  See 18 U.S.C. § 3142(g).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee."  United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

B. Danger to the Community

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Pursuant to the Bail Reform Act, the Second Circuit has repeatedly found home detention and electronic monitoring to be insufficient to protect the community against dangerous individuals:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills.  If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

Millan, 4 F.3d at 1049 (internal citations and quotation marks omitted); see also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) (noting that "electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (citations and quotation marks omitted).

C. Proceeding by Proffer

Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).  In the pre-trial context, few detention hearings involve live testimony or cross-examination.  Most proceed on proffer.  LaFontaine, 210 F.3d at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one

3

misdemeanor conviction. We find the district court committed clear error in failing to credit the Government's proffer with respect to [the defendant's] dangerousness.").

III.     The Defendant Should Be Detained Pending Trial

Title 18 U.S.C. § 3142(e)(3)(E) provides for a presumption that no condition or combination of conditions could ensure the defendant's continued appearance in Court or the community's safety where a defendant faces charges of sexual exploitation of a minor. That is the case here. Even if not, an analysis of the applicable factors makes clear that the defendant should not be released pending trial.

   a.   Nature and Circumstances of the Crime Charged

As explained above, the defendant is charged with one of the most serious federal crimes involving the sexual exploitation of children—the production of child pornography. Specifically, Counts 1 and 2 of the indictment charge the defendant with inducing two minors, both beginning when they were 16 years old, to produce sexually explicit materials for the defendant. The defendant's targeting of young victims, among others, and the sheer number of his apparent sextortion victims, as described above, make clear the need to protect the community from his misconduct pending trial. See, e.g., United States v. Valerio, 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014) ("As previously noted, there is a statutory presumption of detention in this instance. 18 U.S.C. § 3142(e)(3)(B). The reason for this presumption is clear. 'No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children.'").

   b.   Weight of the Evidence

Additionally, the evidence in this case is overwhelming. The government is already in possession of thousands of messages exchanged between the defendant and his victims, which have been pulled both directly from phones seized from him and provided by his victims to law enforcement. The government is also in possession of sexually explicit images of the charged victims, which were pulled from the defendant's phones, and which also contained sexually explicit images of other known or potential victims. All of this is supplemented by detailed metadata and account records linking the defendant to the accounts used to induce the productions, and carry out the extortions, of his victims.

   c.   History and Characteristics of the Defendant

As explained above, this is not the defendant's first sex offense. The defendant has shown a willingness to target and harm minors and other young girls, irrespective of the consequences. For example, as one of his victims pleaded with him not to leak images of her—reiterating that she was just 16 years old, and asking him not to "ruin [her] life," because she "need[s] to go to university"—the defendant's response was simple: "I don't care." That lack of remorse is reflected throughout his misconduct here.

4

The defendant's lack of remorse extends to his prior conviction as well.  In discussions with one of his victims, the defendant appears to have lied about the circumstances of his prior offense (presumably, to avoid spooking his new victim), and he complained about the restrictions of his probation: "dont even get me started on if i had to wear an ankle monitor."  The defendant, in explaining how he had obtained his then-current job, said it was "bc my job actually understood like, i was 20, and its not like i took her into an alley."  He impugned enforcement of the sex offense laws and minimized his misconduct, stating—*to his next victim*— that "we both agree that if u dont have to serve time u shouldnt be registered.  [L]ike if ur case is that bad ur gonna go to jail."

Moreover, the defendant knew his conduct was illegal, but again, he just did not care.  The defendant anonymously extorted the victim he had a 2-year relationship with, and simultaneously encouraged her, as himself, to comply.  When the victim indicated that she had reported the extortion to the FBI, the defendant became extremely concerned.  The defendant asked if she could "submit another tip to say nvm" and offered to "word it for [her]."  When the victim tried to calm him by saying it was unlikely they would ask if she "ever sent nudes under the age of 18," he responded, "dude its cp, its a big deal."  The defendant continued to press, and even followed up later, asking, "u tell the fbi never mind."  This appears to have prompted the victim to delete some evidence, causing real concern.

      d. <u>Nature and Seriousness of the Danger to the Community or to an Individual that Would Be Posed by Release</u>

The discussion above highlights why the nature and seriousness of the defendant's conduct demand his detention.  <u>See</u>, e.g., <u>United States v. Blackman</u>, No. 22 MJ 272 (GRB), 2022 WL 843735, at *5 (E.D.N.Y. Mar. 22, 2022) ("[S]erious bail violations by those charged with child pornography offenses are far from unprecedented.").  But it is worth focusing on an example of the intense trauma that the defendant causes his victim.  For one of the charged victims, the defendant obtained her images—created based on his demanded specifications—and then sold them online.  Those images have now leaked, and in the past two weeks alone, the victim has contacted law enforcement four times to share six links at which her images were shared.  This 16-year-old's victim life has now been forever altered by the defendant's conduct, all through discussions that happened over just a few days.

Moreover, there is no less restrictive means than detention that can ensure the defendant does not have access to the internet to continue his misconduct.  I have spoken with the defendant's state probation officer,[2] and it is clear that the defendant did not comply with the terms of his release.  Less than a year after his sentence, probation officers received a tip that the defendant had continued to engage in misconduct, and they seized two phones from him, on two occasions, confirming that fact.  After this, the defendant was restricted from possessing an internet-capable phone.  Undeterred, the defendant got *another* phone,

---

[2] I spoke with Senior Nassau County Probation Officer J. Dammes, who is different from the probation officer contacted by Pretrial Services.

which probation officers found after another search, in June 2023, which he used to victimize one of the charged victims. And just this morning, law enforcement found a fourth phone during a search of the defendant's home during his arrest (pursuant to a warrant).

   Furthermore, the defendant's conduct in seeking to induce one of his victims to recant her complaint raises concerns of the destruction of evidence and tampering. Because of the breadth of the defendant's scheme, we do not yet know all of the accounts that he uses to store information concerning the offenses. For example, we have identified several DropBox accounts that he uses, but there may be more, and if not detained, the defendant is likely to seek to destroy that evidence. Moreover, the defendant routinely appears to contact his victims after the fact seeking to blame others for his own conduct. These tampering concerns also warrant detention to ensure the defendant is not able to destroy evidence of these or other offenses still under investigation.

  e. <u>The Defendant Poses a Serious Flight Risk</u>

   Finally, the defendant should be detained pending trial because he poses a clear risk of flight. He has a strong incentive to flee. He faces a mandatory minimum sentence of 25 years' imprisonment if convicted of sexual exploitation of a child. <u>See</u> <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87–108 months' imprisonment was significant enough to provide an incentive to flee."); <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) (summary order) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee"). In addition, the evidence against the defendant, described in part above, is overwhelming. <u>See</u> <u>United States v. Millan</u>, 4 F.3d 1038, 1046 (2d Cir. 1993) (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee").

IV. Conclusion

   For the reasons set forth above, the defendant should be prevented from continuing to engage in such conduct, on the internet or in person. He poses a significant danger to the community if released pending trial, and no combination of bail conditions will ensure the safety of the community and his continued appearance before the Court.

               Respectfully submitted,

               BREON PEACE
               United States Attorney

          By: /s/ Kamil R. Ammari
             Kamil R. Ammari
             Assistant U.S. Attorney
             (718) 254-6075

cc: Clerk of Court (BMC) (by ECF)
   Kyla Wells, Esq. (by email and ECF)